Ms. Burke. If it may please the Court, my name is Julie Burke, and I represent Appellant Kadrabasic. This appeal concerns a summary judgment order and an appellant's request that her FMLA interference claim proceed to a jury trial. Under Rule 56, these facts support reversal of the district court opinion. We have an employee that provided actual notice to her supervisor. On November 8th, Ms. Kadrabasic met with her supervisor, Angela Taylor, and told her that she needed leave for her back condition because it had been worsening. Would you concede that that is the date, the earliest date she requested leave in this case? Yes, Your Honor. On the preceding dates, Angela Taylor became aware of the back condition, aware that it was worsening, and we think that context is relevant to the discussion. But yes, November 8th is the earliest. In response, her supervisor did nothing. Ms. Taylor violated Walmart's policy, which required that she direct Kadrabasic to Sedgwick. Furthermore, she did not enforce Walmart's policy. She did not discipline Ms. Kadrabasic for failing to go to Sedgwick. She did not question, why are you coming to me with this? Why aren't you going to Sedgwick? Does the record indicate anything that would suggest that your client was prevented from contacting Sedgwick on her own? No, Your Honor, and that's not the language of the statute. The language of the statute says justify. In here, I believe that the decision of Moore v. GPS Hospitality is particularly instructive. This is a Southern District of Alabama decision authored by Judge Steele that had similar circumstances. And there, the opinion holds that regardless of what the employer's handbook requires, from the moment that the employee alerts her employer to her need for FMLA qualifying leave, she is entitled under the handbook to be informed of her need to comply with the notice policy. And because the employer violated its own rules concerning FMLA notice, and because it cannot show beyond dispute. You can see, though, that your client did not follow the notice procedures during, you know, a long period here, right? Between October the 18th and November the 9th. Yes, Your Honor. Because Walmart both, or because- And so by the time that she does comply, they've already decided to fire her. Isn't that right? Yes, Your Honor. Part of the context that I was referring to previously with Judge Proctor can be found in the text messages between Ms. Taylor and Ms. Kadrabasic. They're at docket 104-6. On October 29th, Ms. Kadrabasic tells Ms. Taylor, I am not coming back to my shift because I'm in too much pain. Taylor says, OK. She does not direct Kadrabasic to Sedgwick. On November 6th, Ms. Kadrabasic tells Taylor, I cannot come into work today. I'm in too much pain. Taylor says, OK. She does not direct Ms. Kadrabasic to Sedgwick. Furthermore, she missed a conference call in the evening of November 8th because she was in the emergency room. And again, Taylor says, OK. But what Judge Steele, in his opinion, directs and holds is to look to, can the employer show beyond a dispute that had the supervisor informed the employee of the notice policy, she would have ignored it? And because they could not make such a showing, it follows, there's an issue of fact that Ms. Kadrabasic would not have ignored it. She would have complied and called Sedgwick on the 4th if she had been reminded by Ms. Taylor. And this creates an issue of fact that Walmart is at least partially to blame for Ms. Kadrabasic's noncompliance. And the Moore decision said that that created an issue of fact as to whether the unusual circumstances justified her noncompliance. There are other regulations that support reversal of the district court's decision in addition to 303C. 303B is a second regulation. 303B places the burden on the employer to obtain additional required information. The regulations concerning unforeseeable FMLA leave were first interpreted by this court in Gay v. Gilman paper. The court interpreted the regulations to require that an employee first must alert her employer to a potential need for FMLA-qualifying leave. The burden then shifts to the employer to obtain additional required information. The district court's opinion moots this portion of Section 303B because it does not shift the burden back to Kadrabasic. Walmart's position and policy that she was required to reach out to Sedgwick is one type of required information that Walmart contends, and they had the burden to remind her. When Sections B and C are read in conjunction, the employee must alert the employer to her need for FMLA-qualifying leave. If additional information is required from the employer, they have the obligation to obtain it, ask her for it, direct her to Sedgwick. She still doesn't do it. You have a Section 303C violation, but the district court mooted that shifting burden. Furthermore, the district court's opinion ignores Section 304. There is an entire section in the regulations on an employee's failure to comply with notice policies, and two provisions here are operative. Section 304D states that the denial of FMLA leave is not mandatory. Under 304D, when an employee fails to comply with Section 303C, which is the internal notice policy, the regulation states whether and the extent to which FMLA leave may be delayed or denied depends on the facts of the particular case. This is consistent with the permissive language used in Section 303C, which says FMLA leave may be delayed or denied. And here, a jury reasonably could find under the facts of this case, an employer is not entitled to deny FMLA leave based on a policy that it itself did not bother to comply with. Section 304 also has a waiver provision in 304E. An employer may waive its internal notice policies. Here, a jury could reasonably find that on November 8th, Angela Taylor waived Walmart's internal notice policies because she did not comply with it, nor did she enforce it. The jury could also base such a waiver determination on the text messages from October 29th, November 6th, November 8th. Separately, the district court construed facts against Ms. Kodrabasic as the non-moveant, and for this reason, his opinion should be denied. He did this when evaluating the depth and clarity of Ms. Kodrabasic's understanding of the FMLA. In the first place, the district court overlooked Ms. Kodrabasic's testimony that she was looking for guidance from Angela Taylor. She says, I wasn't sure exactly what I was going to do, and I guess I was hoping for guidance from Ms. Angela. That's at docket 95, pages 188 through 189, as well as pages 348 through 349. Second, the district court misconstrues Ms. Kodrabasic's understanding of Walmart's policy. On pages 97 through 98 of Ms. Kodrabasic's deposition, she's discussing this, Exhibit 11, Walmart's FMLA notice policy. She's read and she agrees. The first sentence of this policy says that employees are required to notify their manager in Sedgwick 30 days in advance of the need to take FMLA leave if the need for leave is unforeseeable. That first sentence is qualified and limited to foreseeable leave, which is undisputed, does not apply here. The only sentence in this paragraph that relates to unforeseeable leave is the last sentence in the paragraph. And there, it strictly speaks to timing, that the notice must be given as soon as practicable. It does not say in that sentence that unforeseeable leave requires the employee to contact Sedgwick. That language in this paragraph of Exhibit 11 is what Ms. Kodrabasic said she understood Walmart's policy to be. And it's consistent with her understanding. She had reached out to Sedgwick in the past for maternity leave, plainly foreseeable leave, and a jury could find genuine confusion in this situation for her back injury. The district court additionally construes pages 225 through 227 against Ms. Kodrabasic. Here, she's asked, who decides who approves the leave? Twice, Ms. Kodrabasic says, it's Angela Taylor. When pushed for a third time, Ms. Kodrabasic caveats, I'm not sure. It's been a long time. I haven't dealt with a lot of these. Your supervisor approves PTO. Sedgwick approves medical leave. And here, her first two answers combined with her caveats, when Rule 56 is applied, can show genuine confusion and certainly do not show beyond dispute that she would have ignored Angela Taylor on November 8th had Angela Taylor directed her to Sedgwick. And second, this testimony at 225 is conflating an issue between who decides if the leave is approved and to whom does the employee contact. Very — Let me ask you something. Judge Steele's decision you referenced, is that Moore v. GPS? Yes, Your Honor. Not — I don't think that was cited in your opening brief. Correct. But you've come across that now to make the point you were making in your brief? Yes, Your Honor. We cited other district court opinions, the Villegas v. Albertson, the Ruark opinion, but that makes a similar argument. They find that an employer's failure to enforce and comply with the own notice policy creates an issue of fact on unusual circumstances. Under a waiver analysis. That's what I'm wondering. Did Judge Steele deal specifically with waiver? Judge Steele did not rule under 304E on waiver. Judge Steele ruled on 303C, which holds that unusual circumstances can justify their noncompliance, then the leave should not be denied. But I think many of the same facts and the same reasoning would support — you'd rely upon just Taylor's failure to direct your client to Sedgwick? Yes, Your Honor. In the context of a compressed time frame from Thursday when she requested the leave to the termination decision the very next day, she went to physical therapy Thursday afternoon, then saw her orthopedist, and then was in the ER Thursday evening due to extreme pain. The next morning, Ms. Kodrabasic did not go to work, and we argue part of that is some leave that she requested the day before. And Angela Taylor made the decision to terminate her hours later, in part for abandoning her job responsibilities. Okay. Ms. Burke, you've saved a few minutes for rebuttal. Ms. Haynes? Yes, Your Honor, I did. Okay. Good morning, and may it please the Court. Alyssa Haynes for the Appleby Walmart, Inc. The two issues which Ms. Kodrabasic properly preserved below and are before this Court today are, number one, whether the district court correctly held that Ms. Kodrabasic was not entitled to FMLA leave at the time of her termination due to her failure to comply with her employer's usual and customary notice procedures for requesting leave under 303C. Let me interrupt you for a second. So under Walmart's policy, Taylor, the supervisor, should have directed Ms. Kodrabasic to Sedgwick. Yes, Your Honor. So she didn't comply with the policy. Correct. And the employee apparently didn't, or you say, didn't comply with the policy. Why should we hold the employee strictly to the policy but not the employer? Well, as Judge Grimberg held, the duty under 303C for the employee to follow the employer's policy does not obviate Ms. Kodrabasic's duty, independent duty, to comply with the policy. And the only cases we would argue that plaintiff has, or Ms. Kodrabasic has waived her waiver argument, it is not asserted below, it's not asserted in the complaint, and we don't think it's properly here before the Court today. But the only situations where waiver has actually been found, for example, I believe the plaintiff cited cases of Villegas v. Albertson and Dallefield v. Clubs, where there is evidence of the employer's repeated policy of failing, or of granting leave, when leave was not requested through the proper channels. There's situations like in the Ruark v. Arkansas case that they cited, where the employee was never given information about the policies and procedures. And then evidence of obstruction, there was evidence of obstruction in the Moore case they just referred to, where the plaintiff had repeatedly requested forms and direction on compliance, and the employer never provided those situations. But there is no scenario like that here, and there likewise is no Court that has held that due to the employee's failure to comply as well as the employer's failure, then that eliminates the employee's need to comply with the procedures, Your Honor. Kennedy. So you conceded something that I didn't know that you had earlier conceded, and that is that Taylor should have notified her of the need to take leave. But I, that wasn't altogether clear to me. I mean, as I understood the record, Ms. Cotter-Basic would just, it would express some uncertainty about whether to take leave, and then would show up for work, but then take time off, suddenly not appear for work for several days with no explanation. When and how was any duty on the part of Taylor to notify her of the need to contact Sedgwick triggered? Well, Your Honor, the version of events has certainly morphed from the lower court brief or from the lower court briefing and then up to appeal. Below, it was argued that she, that Ms. Taylor, I'm sorry, that Ms. Cotter-Basic provided notice as early as 1028 or 1029, whereas here today, they have conceded that the earliest notice was on November 8th. And yes, Walmart's policy does say that the employer should likewise notify the employee of the responsibility to contact Sedgwick. There's no dis- But what triggers that, though? At what point would that, the employer's responsibility be triggered? Because I'm looking at this and it seemed to me at least that the problem might be of Ms. Cotter-Basic's own making. She expressed uncertainty about whether she wanted to take leave.  At what point was Taylor obliged to notify her about the duty to notify Sedgwick? Well, Your Honor, I don't think there was a definitive duty on Ms. Taylor's part, and you're right. I mean, Ms. Cotter-Basic on the instances from October 28th and October 29th said, I think I may need to take some time. She testified she was not 100 percent sure, or she said maybe I'm going to take some baby bonding leave. It wasn't until November 8th, I believe, where she testified that she told Ms. Taylor, I'm probably going to take my baby bonding leave so I can recover from my back, which we likewise- When was that? That was on November 8th, but we likewise- Okay, okay. But the decision had already been made by then, right? The decision to terminate Ms. Cotter-Basic was made at around 12 p.m. on November 9th for unrelated FMLA reasons. She was already going to be terminated due to reasons completely unrelated for her employment, which included multiple performance issues, which are documented in the record, Your Honor. Was the need for leave unforeseeable? I know the condition was aware, was, Taylor was aware of the condition, but was for the leave, for the need for leave unforeseeable? Both parties did not address that below, but it was conceded essentially, you know, de facto, because both sides agreed that the need was unforeseeable. Okay. The district court did correctly hold that Ms. Cotter-Basic was not entitled to leave at the time, and prior to the Department of Labor's 2009 amendments to the regulations, the FMLA notice standard that was adopted by this circuit was simply that the employee had to give her employer notice that was sufficient to make the employer aware that the absence was due to a potential FMLA event. But then in 2009, the Department of Labor exercised the authority granted to it by Congress and amended 303C to add that specific requirement that the employee must comply with her employer's internal notice proceedings, and if she doesn't, leave can be denied. Despite over 14 years having passed since that amendment, there's only one unpublished decision in this circuit, Crawford v. City of Tampa, which addresses 303C, but there's at least seven other circuits that have both addressed and enforced it, including the Second, the Fifth, as you referred to, the Schizophrenic Sixth, the Seventh, Eighth, Ninth, and the Tenth Circuit have all addressed it, as well as at least the Third Circuit and other district court decisions like Judge Proctor's opinion in Cornwall v. Plastipak from 2021 that acknowledges the courts must not only consider the FMLA statute but the corresponding regulations. And I think there's two particular circuit court cases that are of particular relevance here, which would be the Fifth Circuit case in Acker v. General Motors, where the Court expressly rejected the plaintiff's holding or reliance on those pre-2009 amendment cases because those holdings were, quote, predicated on outdated, materially different regulations. And then in the Eighth Circuit, I believe it's Garrison v. Doldencorp, finding the plaintiff's failure to contact the third-party administrator like we have here to request leave resulted in any loss of any right that they had to request the leave. Am I correct that the internal policy for requesting FMLA leave is specific to FMLA and not other leaves? In other words, they don't have to report. If they're requesting some other type of leave, they don't have to report to Sedgwick. Is that right? Walmart's policy is all types of leave. So regardless of the type of leave, whether it's baby bonding, whether it's maternity leave, whether it's FMLA leave due to a medical condition, it all goes through the I guess my question is, does an employee have to be aware of the fact that there is such a thing as FMLA leave to request it? I don't — there's case law that has found in their favor where the employee did not know, but there is ample and overwhelming evidence in this case of Ms. Caterbasic's knowledge of the need to request leave through Sedgwick. I mean, she had done this four times before. She had requested leave four times before through Sedgwick, had never been denied the leave, and it was as recent as a few months before the work injury that we're here about today where she had gone out on maternity leave through the FMLA. And she testified in her deposition that it did not matter whether it was FMLA, PTO, or any other type of leave. She testified at document 95, page 189. It all fell under the same umbrella. So she was very much aware of not only the fact that Sedgwick was the third-party but also of her obligation to contact Sedgwick to request the leave, Your Honor. Does the prior request for FMLA leave by the plaintiff mitigate any argument about unusual circumstances related to this particular request for leave here? I would say her intricate knowledge of the policies to request leave does go in our favor for there being no unusual circumstance for the — under 303C. But if you — and I know you guys started to question opposing counsel about this. The specific unusual circumstances that Ms. Cadder-Basic relies on here to eliminate her need to contact and follow her employer's policies are, number one, her extreme back pain due to her medical condition with her injury, and then this compressed time period between — And more specifically, Taylor's knowledge of that extreme back pain, right? She testified that as per her personal unusual circumstance, it was that she was in extreme pain going to the doctors and going to the ER that she could — She told Taylor about the extreme pain she was having. She did tell Taylor about the extreme pain, Your Honor. But if you look — for the extreme pain argument, Ms. Cadder-Basic cites to two unreported out-of-state district court cases, both critically distinguishable, and that was Ortega v. San Juan in the District of New Mexico, where the court found an unusual circumstance to exist because the plaintiff had severe debilitating migraines, which, quote, prevented him from doing basically anything, including walking, talking, or using the phone. And then I think the second case — Taylor — should Taylor have notified Cadder-Basic of the need to take leave on October 29th, when Cadder-Basic left work after lunch and said, I'm in an incredible amount of pain and going home? And Taylor responded, okay, please contact me when you're back to work. I'm assuming this is lost time, duty, or injury. No, Your Honor. I do not believe that that triggered the duty for Ms. Taylor to notify Ms. Cadder-Basic of her need to request leave. And there's several courts — I believe it's Sparks v. Sunshine from this circuit and Gutter v. Guide One from the Northern District of Georgia, which holds that those statements were not sufficient to place the employer on notice. But as for the unusual circumstances as to the back pain, the second case was Watson v. Athco Steel, where the court found excessive fatigue due to the medications the plaintiff was taking prevented the plaintiff from calling into work prior to. But here there's no evidence that Ms. Cadder-Basic had any condition which would prevent her from contacting Sedgwick. In fact, the evidence viewed in the light most favorable to Ms. Cadder-Basic is that she was able to continue working nearly all of her shifts from the date of injury until termination. And in fact, during her deposition at Document 95, page 267, she testified, despite her back injury, she was still able to fully perform all of the essential functions of her job. She also went to work the morning of November 8th, the day she says she requested leave. Do we know how many days between October 25th and November 6th she went to work? I believe there was, she had a scheduled off day that's unrelated to this. She just didn't work that day. And then I believe there was another day where she didn't come back to work after a doctor's appointment. That wasn't my question. My question is, do we know how many days she actually worked between the 25th and November 6th? It was almost all of her shifts. I can't remember the exact number, Your Honor. It was several shifts, though, that she worked in her job. She was also able to drive and go to various doctor appointments and continuously email and text message with her supervisor, starting on the day she provided notice of her injury, which was three days after the injury, and continuing through termination. Ms. Counterbasic also raises this compressed time period argument, saying that between her request for leave on November 8th and her termination the following day, she simply could not have complied with our policy request said with. But again, looking at the record and the evidence viewed most favorable towards Ms. Counterbasic, she went to work that morning. She drove to an orthopedic appointment. And then even when she was in the emergency room that day, around 6.40 p.m., where she was there for approximately two hours, she had back and forth text message conversations with Ms. Taylor while she was in the ER. And that's at 1046 page 13. And she was also discharged from the ER without any physical restrictions whatsoever. That's doc 1047 at pages 12 and 23. So if she was able to have ongoing text messages back and forth with Ms. Taylor, she was able to go into work in the morning, she was able to drive back and forth to doctor's appointments, it seems very obvious that she had the absolute capability to comply with the procedures and to contact Sedgwick to request the leave. Well, and I'm not sure to what extent this becomes relevant to the analysis, but even after requesting leave on November 8, the plaintiff said that she would probably attend final preparations for sale and ended up doing so, correct? That's correct, Your Honor. She did. She ended up coming to do those final preparations in the store, I believe that was in the evening. And then again, the waiver situations simply don't apply here with the ample evidence. And not only did she request leave on multiple prior occasions and was granted it from Sedgwick, she was given, unlike some of the other cases cited in their brief, she was given information on Sam's Club's policy as she testified to, and she was trained on it as recent as June of 2018. And in fact, she was so familiar with how leave worked under the FMLA that she knew that she could take medical FMLA leave only if certified by a health care provider. She knew she could either take continuance, reduced schedule, or intermittent leave, and that's all at document 95, page 95. So taking all of this in her favor, in the light most favorable to her, the district court correctly found that she was not entitled to leave at the date of termination, and we would respectfully request that this court affirm the district court's grant of summary judgment. Thank you, Your Honors. Thank you, Ms. Haines. Ms. Burke, you've saved three minutes. I'd like to circle back to where I started at the Moore v. GPS opinion. Regardless of what Ms. Kodrer-Basic should have known based on her prior childbirths and experience with Sedgwick, from the moment that she informed Angela Taylor of her need for leave, FMLA qualifying, on November 8th, she was entitled, under Walmart's own policy, to be informed of their notice structure, to be directed to call Sedgwick. Because Walmart has not shown... The problem is, though, everything that happened before then, right? You're saying she would have been fired regardless, Your Honors? Your Honor, this is an FMLA interference claim where the employer's motives are irrelevant. Walmart has an affirmative defense to prove beyond dispute that she would have been terminated regardless of her request for leave. They're entitled to terminate her, are they not, for her unexcused absences during that period, during the interim? Your Honor, there are several facts that prevent them from meeting the burden of proving beyond dispute. They are entitled, but a jury could disagree and find otherwise. Angela Taylor testified that the decision to terminate was not made until noon on November 9th. If she was truly being fired for her leave on November 6th, then a jury could find that that decision should have been made sooner. But here, the temporal proximity between the request for leave on November 8th and the decision to terminate the very next day could support a jury finding that she was not fired for these... In GPS, the issue was the plaintiff's mother was hospitalized, correct? Yes, Your Honor. And the plaintiff repeatedly told her store manager of the need to take leave because of her hospitalized mother. But the policy also indicated that you had to request leave from both the store manager and human resources. Yes, Your Honor. And she never contacted human resources, but the store manager didn't tell her you also need to let human resources know. Yes, Your Honor. Wasn't that the key thing that Judge Steele was focused on in denying summary judgment? Yes, Your Honor. And here, Ms. Khadra Basic requested leave from her supervisor. And Walmart's policy says to request leave from your supervisor and in Sedgwick. And Angela Taylor never directed Ms. Khadra Basic to Sedgwick. The policy... In GPS, there was never... I don't think there was an indication. I'm just skimming the opinion quickly. But I don't think there was an indication that that plaintiff had requested leave before and notified human resources on those prior occasions in requesting leave before. To assume that Ms. Khadra Basic would have ignored Ms. Taylor's direction to contact Sedgwick on November 8th based on the fact that she used Sedgwick previously doesn't construe the facts in Ms. Khadra Basic's failure. But I don't think we have to make that assumption. The assumption is she knew to contact Sedgwick without being told because she had done it before. Yes. And the portion of Exhibit 11 that I read to you in my first argument says that you should contact Sedgwick for foreseeable leave where you know 30 days in advance. It does not say to contact Sedgwick for unforeseeable leave. Her childbirth was a foreseeable leave. That's consistent with what she did before. But nothing in that policy... And it's consistent with her confusion about what to do here in this unforeseeable back condition. It's important to recognize the FMLA deals with employees when they're at their worst, when they're experiencing serious health conditions. And that's why for 25 years this circuit has interpreted the regulations, Section 303B, to place the burden on the employer to request and obtain any additional required information once they are alerted to a potential need for FMLA leave. Thank you. Thank you. Thank you. We'll move to our last case.